IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JULIE G. S.,<br><br>          Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>          Defendant. | CV 19-151-M-KLD<br><br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(f).

## I.  Procedural Background

Plaintiff filed her applications for disability insurance benefits and supplemental security income on May 15, 2015, alleging disability since September 1, 2014. (Doc. 7 at 399-416). Plaintiff's claim was denied initially and on reconsideration, and she requested an administrative hearing in front of an Administrative Law Judge ("ALJ"). (Doc. 7 at 176-177; 253-252). Following an administrative hearing on June 26, 2017, the ALJ issued a decision denying

Plaintiff's claim and finding her not disabled. (Doc. 7 at 110-170; 222-241).

Plaintiff submitted a request for review by the Appeals Council, which was granted on September 11, 2018. (Doc. 7 at 242-245). The Appeals Council remanded Plaintiff's claim for further consideration of her visual impairment and headaches and to obtain updated additional evidence. (Doc. 7 at 244-245).

On February 20, 2019, Plaintiff appeared with counsel in front of a different ALJ for a second administrative hearing. (Doc. 7 at 68-109). At that hearing, the ALJ accepted additional evidence and elicited medical expert testimony addressing Plaintiff's visual impairment and headaches. (Doc. 7 at 68-109). On March 29, 2019, the ALJ issued a decision denying Plaintiff's claim and finding her not disabled with the meaning of the Act from September 1, 2014 through the date of the decision. (Doc. 7 at 47-60). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated March 29, 2019, the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final

decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

## B. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable

physical or mental impairment that has lasted or can be expected to last for a

continuous period of twelve months or more; and (2) the impairment renders the

claimant incapable of performing past relevant work or any other substantial

gainful employment that exists in the national economy. 42 U.S.C. §§

423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*,

359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a

claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not

proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The

claimant bears the burden of establishing disability at steps one through four of this

process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in

substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If

so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any

impairments, singly or in combination, that qualify as severe under the regulations.

20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the

claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the

national economy, taking into consideration claimant's residual functional

capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and

416.920(4)(v). The ALJ may satisfy this burden through the testimony of a

vocational expert or by referring to the Medical-Vocational Guidelines set forth in

the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this

burden, the claimant is not disabled.

## III.   Discussion

The ALJ followed the five-step sequential evaluation process in evaluating

Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset date of September 1, 2014. (Doc.

7 at 49). At step two, the ALJ found that Plaintiff had the following severe

impairments: fibromyalgia; lumbar and cervical degenerative disc disease; status-

post lumbar fusion in 2012; carpal tunnel syndrome status-post release in 2010; left

knee degenerative joint disease; headaches; and cerebral vascular accident with

visual changes and loss of right eye peripheral vision. (Doc. 7 at 50). At step three,

the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled any impairment described in the Listing

of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P,

app. 1. (Doc. 7 at 51).

The ALJ then found that Plaintiff had the residual functional capacity to

perform a reduced range of light work as follows:

> She can lift/carry/push/pull 20 pounds occasionally and 10 pounds
> frequently. She can stand and/or walk (with normal breaks every 2 hours)
> about 6 hours in an 8-hour workday. She can sit (with normal breaks every 2
> hours) about 6 hours per 8-hour workday. She can alternate such positions as
> allowed by normal work breaks occurring every two hours. She can
> occasionally stoop, balance, kneel, crouch, crawl, and climb ramps/stairs.
> She can never climb ladders/ropes/scaffolds. She can frequently finger with
> her right upper extremity. She must avoid concentrated exposure to
> vibrations (in the left lower extremity) and extreme cold. She must avoid
> concentrated exposure to unprotected heights, moving mechanical parts, and
> motor vehicles. Work must avoid tasks that require peripheral vision to the
> right or depth perception she can perform no work with small objects
> requiring detail such as threading a needle. She can tolerate noise at levels
> no greater than 3/5, as defined in the Selected Characteristics of Occupations
> (SCO). She must have the option to wear a hat, visor, or shaded lenses while
> working. She can use her vision for reading for 55 minutes of every 60
> minutes. She can understand, remember, and carry out simple, detailed, and
> complex tasks. She can maintain attention, concentration, persistence, and
> pace for such 8-hour workdays and 40-hour workweeks. She can tolerate
> interaction with supervisors, coworkers, and public. She can tolerate usual
> work situations and changes in routine work setting.

(Doc. 7 at 54). At step four, the ALJ determined that Plaintiff was unable to

perform past relevant work as an ammunition loader, customer service clerk, and

waitress. (Doc. 7 at 58-59). Proceeding to step five, the ALJ found based on the

vocational expert's testimony that there were other jobs existing in significant

numbers in the national economy that Plaintiff could perform, including cashier,

mail clerk, and counter attendant/rental clerk. (Doc. 7, at 57-58).

7

Plaintiff argues the ALJ's decision is not supported by substantial evidence and raises three main issues on appeal. First, Plaintiff maintains the ALJ did not provide specific and legitimate reasons for rejecting the opinion of treating physician Dr. Elena Furrow. Second, Plaintiff contends the ALJ did not provide clear and convincing reasons for discrediting her subjective symptom testimony. Finally, Plaintiff argues the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical question.

### A.    Medical Opinion Evidence

When evaluating a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to the greatest weight. *Lester*, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830.

Where there are conflicting medical opinions in the record, the ALJ is responsible for resolving that conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). If a treating physician's opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence" in the record, it is entitled to controlling

weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir 2007). If a treating physician's

opinion is not entitled to controlling weight, the ALJ considers several factors in

determining what weight it will be given. *Orn*, 495 F.3d at 631. Those factors

include the "[l]ength of the treatment relationship and the frequency of the

examination" and the "[n]ature and extent of the treatment relationship." *Orn*, 495

F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)). Additional factors relevant

to the ALJ's evaluation of any medical opinion, not limited to that of a treating

physician, include: (1) the supportability of the opinion; (2) the consistency of the

opinion with the record as a whole; (3) the specialization of the treating or

examining source; and (4) any other factors that are brought to the ALJ's attention

that tend to support or contradict the opinion. [1] 20 C.F.R. §§ 404.1527, 416.927.

---

1 For claims filed after March 27, 2017, the opinions of treating physicians are not entitled to any special deference over the opinions of non-treating physicians. See 20 C.F.R. §§ 404.1520c; 416.920c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). Because Plaintiff filed her claim before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. See 20 C.F.R. §§ 404.1527, 416.927.

To discount the uncontroverted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons for doing so and those reasons must be supported by substantial evidence. *Lester,* 81 F.3d at 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1.    Dr. Elena Furrow

Plaintiff argues the ALJ erred by rejecting a Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed by her treating primary care physician Dr. Elena Furrow. (Doc. 7 at 1003-1008). Dr. Furrow found that Plaintiff could do no lifting or carrying; could sit for up to two hours during an eight-hour work day and for 30 minutes at time without interruption; and could stand or walk for up to two hours during an eight-hour work day and for 20 minutes at a time without interruption. (Doc. 7 at 1003-1004). Dr. Furrow further indicated that it was medically necessary for Plaintiff to use a cane to ambulate and could only walk "1/2 block" without a cane. (Doc. 7 at 1004). Dr. Furrow stated

10

that Plaintiff could do no reaching, pushing, or pulling and could not operate foot controls, but could do occasional handling, fingering, and feeling. (Doc. 7 at 1005).

Dr. Furrow's opinion was contradicted by the two state agency consulting physicians who reviewed Plaintiff's medical records in August 2015 and January 2016, respectively, and identified limitations consistent with the ability to perform a limited range of light work. (Doc. 7 at 178-187, 209-219). Because Dr. Furrow's opinion was contradicted by the opinions of the state agency physicians, the ALJ could reject it for specific and legitimate reasons supported by substantial evidence in the record. See *Bayliss v. Barnhart*, 437 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ identified three reasons for rejecting Dr. Furrow's opinion. First, the ALJ gave the opinion little weight because it was drafted in June 2014 – three months before Plaintiff's alleged disability onset date of September 1, 2014. (Doc. 7 at 57). Although Dr. Furrow's opinion bears a handwritten date of June 2, 2014, the record reflects that Plaintiff did not establish care with Dr. Furrow until July 7, 2016. (Doc. 7 at 774, 1008). Dr. Furrow's treatment notes from July 7, 2016, reflect that Plaintiff was a "new patient" at that time and was there "to establish care" for chronic low back pain. (Doc. 7 at 774, 776). There are no earlier treatment notes from Dr. Furrow in the record. The Court agrees with Plaintiff that, based on the evidence of record, it appears Dr. Furrow mistakenly dated her

opinion June 2, 2014. Because there is no evidence that Dr. Furrow saw Plaintiff before July 2016, she must have drafted her opinion sometime after that. Thus, the ALJ's reasoning in giving Dr. Furrow's opinion little weight because it predated Plaintiff's alleged onset date is not supported by substantial evidence.

Even assuming this reason was deficient, the Commissioner argues any error was harmless because the ALJ provided two additional reasons for discounting Dr. Furrow's opinion. The ALJ found Dr. Furrow's opinion unpersuasive for the additional reason that it was "wholly inconsistent with examination results throughout the period at issue, including the more recent examination from Dr. Carter Beck in October 2016 wherein the claimant had near normal physical functioning at a level not even commensurate with the extreme limitations proposed by Dr. Furrow." (Doc. 7 at 58-59). In 2012, Plaintiff presented to Dr. Beck with advanced lumbar spondylolisthesis and he performed a successful lumbar fusion surgery. (Doc. 7 at 897). Dr. Beck did not see Plaintiff again until October 2016, when she was referred to him for a neurosurgical evaluation by her treating providers at the Montana Spine and Pain Center. (Doc. 7 at 897). Dr. Beck noted that Plaintiff had been "bothered by a multitude of chronic pain complaints" since her surgery and a recent MRI scan showed significant spinal stenosis. (Doc. 7 at 897, 1035). Dr. Beck's physical examination of Plaintiff's spine was

"unremarkable." (Doc. 7 at 899). His neurological examination revealed "normal

strength, bulk, and tone in all muscle groups" and "normal gait and station." (Doc.

899). Dr. Beck found no "objective sign of myelopathy" and recommended that

Plaintiff "be treated conservatively" until her cervical stenosis became clearly

symptomatic, at which time cervical fusion surgery would likely be necessary.

(Doc. 7 at 900). The Commissioner argues the ALJ properly cited Dr. Beck's

findings as a basis for rejecting Dr. Furrow's opinion as to the severity of

Plaintiff's limitations.

The Court disagrees. For one thing, unlike Dr. Furrow, Dr. Beck did not

complete a functional capacity assessment and did not identify Plaintiff's specific

physical abilities and limitations. And while Dr. Furrow saw Plaintiff regularly

after July 7, 2017, Dr. Beck had not seen Plaintiff for nearly four years when he

examined her in October 2016. More importantly, the ALJ's made clear she was

discounting Dr. Furrow's opinion based on the findings in Dr. Beck's "more recent

examination." (Doc. 7 at 58). As discussed above, however, the date of Dr.

Furrow's opinion is not clear. Presumably, Dr. Furrow would have drafted her

opinion sometime after seeing Plaintiff for the first time on July 7, 2016, but before

the administrative hearing on June 27, 2017, when Plaintiff's counsel discussed the

opinion with the ALJ[2]. (Doc. 7 at 156-58). Thus, contrary to the ALJ's reasoning,

Dr. Furrow's opinion may well have been more recent than Dr. Beck's.

To the extent the ALJ referred to other "examination results throughout the

period at issue" as a reason for rejecting Dr. Furrow's opinion, the ALJ did not

explain what examination results she was referring to or how those results were

inconsistent with Dr. Furrow's opinion. The Ninth Circuit has required an ALJ to

link purportedly inconsistent evidence with the discounted medical opinion. See

*Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988). The ALJ's general

reference to other "examination results throughout the period at issue" falls short

of "setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating [the ALJ's] interpretation thereof, and making findings."

*Magallanes*, 881 F.2d at 751.

Given the ambiguity with respect to the date of Dr. Furrow's opinion, the

ALJ arguably had a duty to develop the record to determine exactly when Dr.

Furrow issued her opinion See *Mayes v. Massannari*, 276 F.3d 453, 459-60 (9th

---

2 There was some confusion at the administrative hearing in June 2017 because an
unrelated functional capacity evaluation for a different claimant had mistakenly
been made part of the record and the ALJ did not have Dr. Furrow's opinion. After
discovering this mistake, the ALJ held the record open for two weeks after the
hearing and Plaintiff's counsel submitted Dr. Furrow's opinion. (Doc. 7 at 156-
158, 169).

Cir. 2001) (The ALJ has a duty to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (the duty to develop the record applies even when a claimant is represented by counsel). At a minimum, the second reason provided by the ALJ for discounting Dr. Furrow's opinion was not a specific and legitimate one, supported by substantial evidence in the record.

The third reason provided by the ALJ is also problematic. The ALJ found Plaintiff's "own function report indicates greater activities of daily living than proposed by Dr. Furrow, including the ability to shop, drive, and perform general household chores that require lifting." (Doc. 7 at 58). The ALJ was referring to a function report form on which Plaintiff indicated she could drive if she had to but had problems pushing the clutch, left the house daily, walked, and shopped once week for "30 minutes to an hour," and did light cleaning around the house. (Doc. 486-493).

Notably, however, Plaintiff completed this function report form in June 2015 – almost four years before the ALJ's decision in April 2019. Plaintiff's subjective testimony at her administrative hearing two years later -- in June 2017 -- was essentially consistent with Dr. Furrow's opinion. For example, Plaintiff testified

that she could walk for ten to fifteen minutes at a time (Doc. 7 at 148), and sit for

15 to 25 minutes at a time (Doc. 7 at 130). Plaintiff explained that she was not able

to drive after 2015 (Doc. 7 at 129, 131), and began using a cane on Dr. Furrow's

recommendation. (Doc. 7 at 131).

Again, the date of Dr. Furrow's opinion affected the validity of the ALJ's

reasoning. Had Dr. Furrow drafted her opinion in June 2014, it might have been

reasonable for the ALJ to rely on a function report from June 2015. But because

Dr. Furrow did not even begin treating Plaintiff until July 2016, the ALJ's reliance

on a function report from June 2015 to discount Dr. Furrow's opinion was

misplaced.

The Court therefore finds that the ALJ did not provide specific and

legitimate reasons for rejecting Dr. Furrow's opinion. At the February 2019

administrative hearing, the vocational expert testified that a person with the

limitations identified by Dr. Furrow would not be able to perform any of Plaintiff's

past relevant work or any other work in the national economy. (Doc. 7 at 104-105).

Thus, the ALJ's error in rejecting Dr. Furrows opinion was not harmless, and this

case must be remanded.

        2.     Other Medical Evidence

To the extent Plaintiff argues the ALJ erred by not including migraines as a

severe impairment at step two, she is mistaken. (Doc. 12 at 12). Contrary to

Plaintiff's argument, the ALJ found that her headaches were a severe impairment

and considered the medical evidence relating to her headaches, including the

testimony of the medical expert, when assessing her residual functional capacity.

(Doc. 7 at 50, 56, 57). Plaintiff cites to various headache-related notes in her

medical records, but does not point to any medical opinion evidence that the ALJ

should have evaluated differently. See *Turner v. Comm'r of Soc. Sec.*, 613 F.3d

1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign

any specific limitations or opinions regarding the claimant's ability to work, the

ALJ was not required to provide clear and convincing reasons for rejecting the

report).

In a one-sentence argument, Plaintiff claims the ALJ erred by not including

"mood swings, crying and feeling overwhelmed" as severe impairments at step

two. (Doc. 12 at 12). Because Plaintiff does not develop this argument with any

specificity, the Court considers it waived. *Carmickle v. Comm'r Soc. Sec. Admin.*,

533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("[I]ssues not argued in specificity in

briefing will not be addressed."). Regardless, the record reflects that the ALJ found

Plaintiff had the medically determinable mental impairment of depression, and

properly evaluated the severity of that impairment using the four functional areas

described in the regulations. (Doc. 7 at 50-51). The ALJ also considered evidence

of Plaintiff's "intermittent anxiety and depression" when assessing her residual

functional capacity. (Doc. 7 at 57). Plaintiff has not demonstrated that the ALJ

erred in evaluating the severity of her mental impairments.

Finally, Plaintiff argues that "virtually all of the medical records show a

progression of back pain as well as knee pain" (Doc. 12 at 13) and maintains the

ALJ erred in stating that "[t]here was no evidence of worsening of symptoms" after

the alleged onset date. (Doc. 7 at 55). Plaintiff supports this argument with a long

summary of her treatment records, but does not specifically challenge the ALJ's

assessment of any particular medical opinion other than Dr. Furrow's.

## C.   Remand

Having determined that remand is warranted based on the ALJ's failure to

adequately reject Dr. Furrow's opinion, the Court declines to consider Plaintiff's

remaining argument that the ALJ failed to provide clear and convincing reasons for

discounting her subjective symptom testimony. See *Hiler v. Astrue*, 687 F.3d

12018, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the

reasons stated, we decline to reach [plaintiff's] alternative ground for remand.");

*Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal.

2008)(declining to "address the other claims plaintiff raises, none of which would

provide plaintiff with any further relief than granted" by remand).

Plaintiff asks the Court to remand this matter for an award of benefits, or in the alternative, for further administrative proceedings. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should develop the record as to the date of Dr. Furrow's opinion and reevaluate the opinion accordingly. The ALJ should consider what, if any, additional limitations are properly incorporated into the RFC assessment to account for Plaintiff's impairments, and elicit additional vocational expert testimony as necessary. In addition, the Court acknowledges that the ALJ is in the best position to evaluate the medical evidence. Providing the ALJ with the opportunity to reevaluate the Dr. Furrow's opinion on remand will remedy the identified defects in the original administrative proceedings. Even crediting the discredited evidence as true, remand for further proceedings rather than an award of benefits is the proper

19

remedy because there is substantial doubt based on the record as a whole whether

Plaintiff is in fact disabled.

## IV.    <u>Conclusion</u>

For the reasons discussed above, the Commissioner's decision denying

Plaintiff's claims for disability insurance benefits and supplemental security

income benefits is REVERSED and this matter is REMANDED pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

opinion.

DATED this 11th day of May, 2020

Kathleen L. DeSoto
United States Magistrate Judge